# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 24 2018, 6:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Curtis Pearman
Naples, Florida

ATTORNEYS FOR APPELLEE

Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

Michael E. Brown
R. Eric Sanders
Kightlinger & Gray, LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Curtis Pearman,

*Appellant-Plaintiff,*

v.

Andrew Alexander Szakaly,

*Appellee-Defendant.*

May 24, 2018

Court of Appeals Case No.
41A01-1711-CC-2647

Appeal from the
Johnson Superior Court

The Honorable
Kevin M. Barton, Judge

Trial Court Cause No.
41D01-1612-CC-1165

**Kirsch, Judge.**

Curtis Pearman ("Pearman") appeals the trial court's order granting a motion for judgment on the pleadings filed by Andrew Alexander Szakaly ("Szakaly") in Pearman's action for legal malpractice against Szakaly. Pearman raises several issues on appeal that we consolidate and rephrase as: whether the trial court erred in granting the motion for judgment on the pleadings because Pearman's complaint was governed by the two-year statute of limitations and was barred because it was untimely filed.

We affirm.

## Facts and Procedural History

Pearman owned and operated a commercial office complex in Greenwood, Indiana. Pearman signed a lease agreement, with an effective lease date of January 1, 2008, with the Jacksons, a husband and wife team of dentists, for one of Pearman's Greenwood office suites. The lease was for a term of three years and granted the Jacksons the right to three additional "option periods," each three years in length, as long as they paid a specified rent increase for each option period. *Appellant's App. Vol. 2* at 13. If the Jacksons wished to exercise the option to renew, the lease required them to give Pearman a six-month written notice. *Id.*

At some point during the initial lease period, the Jacksons indicated to Pearman that they intended to remain in occupancy of the commercial suite into the first option period. *Id.* at 13-14. At that time, however, they had already missed the six-month written notice period. Nevertheless, Pearman orally granted the

Jacksons a waiver of the notice requirement, and the parties agreed to continue to discuss increasing the amount of square footage occupied by the Jacksons.

[5] On January 1, 2011, the first optional period for the lease began, and the Jacksons remained in occupancy of the property. On February 12, 2011, the Jacksons paid the "first option period rent increase." *Id*. at 14. After several increased option rental payments had been made, the Jacksons told Pearman that they had purchased another office property and would be moving from his office property. *Id*. Pearman informed the Jacksons that he would not release them from their lease obligations, and after the parties failed to reach any agreement, Pearman hired Szakaly for legal representation.

[6] On November 28, 2011, Szakaly filed a complaint against the Jacksons on Pearman's behalf in Johnson County. On November 12, 2013, the Jacksons filed a motion for summary judgment in that case. Thirty-four days later, on December 16, 2013, Pearman received by email "Szakaly's first alert of the pending Jackson Motion for summary judgment." *Id*. at 18. On December 18, 2013, Szakaly filed a response to the summary judgment motion, without designating any exhibits or affidavits. *Id*. Szakaly, by email, told Pearman that there was no need for Pearman to prepare an affidavit. *Id*.

[7] When Pearman asked Szakaly why he had not conducted any discovery, Szakaly responded that he was waiting for a ruling on the motion for summary judgment and a trial setting. *Id*. The trial court subsequently granted summary judgment in favor of the Jacksons and noted that Pearman had not designated

any evidence, but, instead, relied solely upon the Jacksons' designated evidence. *Id*. at 16, 18. Szakaly filed a motion to correct error, which the trial court construed as a motion to reconsider since the grant of summary judgment was not a final judgment. The trial court denied the motion.

[8] Pearman hired replacement legal counsel and terminated Szakaly. Specifically, in a certified letter dated June 12, 2014, Pearman terminated Szakaly's representation, stating in pertinent part:

> As I have learned additional issues concerning your representation of me, I have needed to update my June 13, 2014 [sic] emailed Termination Notices. *Due to your misrepresentation of the status of this case, gross negligence, failure to comply with our agreements along with my written instructions and your ignoring my right to discovery regarding Pearman v. Jackson, as well as your failure to make the timely and appropriate pleadings to the Court, thereby jeopardizing the outcome of this action, I have terminated your legal representation of me in Pearman v. Jackson.*
>
> . . . .
>
> Naturally, I have no intention of compensating you for any unpaid amounts that you may claim to be owed to you in this matter. *There has been substantial demonstrable damage caused to my position in the Jackson matter by your actions and/or failures to act on my behalf*, as well as your apparent failure to forward missing documents from this case to my current counsel.

*Id*. at 62 (emphasis added). In the Jackson matter, Pearman's replacement counsel filed another motion to reconsider, which included untimely evidence. That motion was also denied by the trial court. The case was then appealed to

this court, and the trial court's decision was affirmed in a published opinion that was decided on January 26, 2015. *Id*. at 68-84.

[9] On December 22, 2016, Pearman filed his pro se legal malpractice action against Szakaly. Pearman alleged that Szakaly had failed to perform his responsibilities, e.g., to keep the client advised of all pending motions and to properly designate summary judgment materials, in a sufficient manner to meet the appropriate standard of care. *Id*. at 21-23. Pearman also alleged a breach-of-contract claim against Szakaly, arguing that Szakaly had breached a duty to timely provide Pearman with all correspondence and filings and to preserve alleged confidential information during settlement discussions. *Id*. at 23-24. Finally, Pearman alleged that Szakaly engaged in negligent misrepresentation by communicating false information to Pearman about the status of the case against the Jacksons. *Id*. at 24-26.

[10] Pearman attached several exhibits to his complaint, including the termination letter to Szakaly dated June 12, 2014. *Id*. at 62. In response, Szakaly filed a motion for judgment on the pleadings under Indiana Trial Rule 12(C), arguing that Pearman's complaint was barred by the governing two-year statute of limitations, which expired on June 12, 2016,[1] which was several months before

---

[1] Pearman argues that the termination letter was sent on July 24, 2014 and not June 12, 2014. *Appellant's Br*. at 16. However, the letter attached to the complaint in this matter was dated June 12, 2014, and that date was used by the trial court in its order. *Appellant's App. Vol. 2* at 9-12. Moreover, Pearman's December 22, 2016 complaint would be time barred even if the termination letter had been sent on July 24, 2014, and the discrepancy in dates is irrelevant.

Pearman's complaint was filed on December 22, 2016. *Appellant's App. Vol. 3* at 2-9. Pearman responded to the Trial Rule 12(C) motion, arguing that his complaint was saved by the discovery rule because he did not "sustain any *final* and '*ascertainable* damage'" from Szakaly's alleged malpractice until May 2015 when the opportunity to reverse the underlying negative summary judgment expired. *Id*. at 10-11 (emphasis in original).

[11] On June 15, 2017, the trial court granted Szakaly's motion for judgment on the pleadings. The trial court determined that Pearman's claims were governed by the two-year statute of limitations under Indiana Code section 34-11-2-4 and cited *Biomet, Inc. v. Barnes & Thornburg*, 791 N.E.2d 760 (Ind. Ct. App. 2003), *trans. denied*. *Appellant's App. Vol. 2* at 10. The trial court acknowledged that legal malpractice actions are subject to the discovery rule and then found that Pearman's termination letter demonstrated his knowledge that damage from the alleged malpractice had occurred as of June 12, 2014. *Id*. at 10-11. The trial court rejected Pearman's contention that the statutory period did not commence until conclusion of the underlying case. *Id*. at 11. Additionally, the trial court concluded that Pearman's negligent misrepresentation claim arose in tort and was also barred by the governing two-year statute of limitations under section 34-11-2-4. *Id*. The trial court further noted that it was "apparent even to a layman," that Pearman's claim of breach of contract was for legal malpractice and was barred by the governing two-year limitations period. *Id*. at 11-12. Pearman filed a motion to correct error, which the trial court denied. Pearman now appeals.

# Discussion and Decision

[12] Pearman argues that the trial court erred when it granted Szakaly's motion for judgment on the pleadings. The standard of review for a ruling on a motion for judgment on the pleadings under Indiana Trial Rule 12(C) is de novo. *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 839-40 (Ind. Ct. App. 2017), *trans. denied*. A ruling on a Trial Rule 12(C) motion must be based solely on the pleadings, as well as any facts of which judicial notice may be taken, and courts must accept the properly-pleaded material facts alleged in the complaint as true. *Id*. at 840. A motion for judgment on the pleadings may be granted only if it is clear from the face of the complaint that relief could not be granted to the plaintiff under any circumstances. *Id*.

[13] For purposes of a Trial Rule 12(C) motion, the pleadings consist of the complaint and answer, as well as any reply to a counterclaim, answer to a cross-claim, third-party complaint, and answer to a third-party complaint. *Id*. Pleadings also consist of any written instrument attached to a pleading, pursuant to Indiana Trial Rule 9.2. *Id*. "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Ind. Trial Rule 10(C).

[14] Pearman contends that it was error for the trial court to grant judgment on the pleadings because his complaint was timely filed and not time barred by the statute of limitations. He first asserts that, contrary to the trial court's order, his cause of action against Szakaly did not accrue until the conclusion of his

underlying action. Specifically, he maintains that his cause of action against Szakaly was tolled until the date the appeal was handed down in his action against the Jacksons because, until that time, he had not suffered any compensable damage. Additionally, Pearman argues that the trial court applied the incorrect statute of limitations and that his malpractice action against Szakaly was not governed by a two-year statute of limitations. Instead, Pearman claims that his complaint should have been governed by at least a six-year statute of limitations because his breach of contract and negligent misrepresentation were separate and distinct from his legal malpractice claim and did not involve a personal property right.

[15] We turn first to Pearman's claim that the trial court applied the wrong statute of limitations to his complaint against Szakaly. The statute of limitations for a claim of legal malpractice is two years. Ind. Code § 34-11-2-4. Pearman's complaint against Szakaly contained three counts; Count I was for legal malpractice, and Counts II and III were characterized as breach of contract and negligent misrepresentation, respectively. However, these labels are not dispositive because the applicable statute of limitations is ascertained by identifying the nature or substance of the cause of action, rather than by the form of the pleadings. *Stickdorn v. Zook*, 957 N.E.2d 1014, 1021 (Ind. Ct. App. 2011) (citing *Whitehouse v. Quinn,* 477 N.E.2d 270, 273 (Ind. 1985)).

[16] Pearman's complaint for legal malpractice alleged that Szakaly had failed to perform his responsibilities, e.g., to keep the client advised of all pending motions and to properly designate summary judgment materials, in a sufficient

manner to meet the appropriate standard of care. *Appellant's App. Vol. 2* at 21-23. Based on the nature of the harm, this count was governed by the two-year statute of limitations under Indiana Code section 34-11-2-4.

[17] In Count II of his complaint, Pearman alleged a breach-of-contract claim against Szakaly, contending that Szakaly had breached a duty to timely provide Pearman with all correspondence and filings and to preserve alleged confidential information during settlement discussions. *Id*. at 23-24. He further claimed that "[a]s a result of Szakaly's breach of his duties . . ., Pearman lost in his Complaint against the Jacksons . . . ." *Id*. at 24. In Count III, Pearman alleged that Szakaly engaged in negligent misrepresentation by communicating false information to Pearman about the status of his case against the Jacksons. *Id*. at 24-26. The substance of both of these allegations is based on the alleged failures and breach of duties of Szakaly during the course of his representation of Pearman in his action against the Jacksons. Therefore, the substance of these claims is legal malpractice, notwithstanding Pearman's characterizations of them as breach of contract and negligent misrepresentation. Accordingly, the two-year statute of limitations from Indiana Code section 34-11-2-4 applies.

[18] We next turn to Pearman's argument that his complaint was timely filed because his cause of action against Szakaly did not accrue until the conclusion of his underlying action against the Jacksons. For a cause of action for legal malpractice to accrue, it is not necessary that the full extent of damage be known or even ascertainable, but only that some ascertainable damage has occurred. *Myers v. Maxson*, 51 N.E.3d 1267, 1276-77 (Ind. Ct. App. 2016)

(citing *Doe v. United Methodist Church*, 673 N.E.2d 839, 842 (Ind. Ct. App. 1996), *trans. denied*), *trans. denied*. Legal malpractice actions are subject to the discovery rule, which provides that the statute of limitations does not begin to run until such time as the plaintiff knows, or in the exercise of ordinary diligence could have discovered, that he had sustained an injury as the result of the tortious act of another. *Id*. (citing *Biomet Inc. v. Barnes & Thornburg*, 791 N.E.2d 760, 765 (Ind. Ct. App. 2003), *trans. denied*). Under the continuous representation doctrine, the statute of limitations does not commence until the end of an attorney's representation of a client in the same matter in which the alleged malpractice occurred. *Landmark Legacy, LP v. Runkle*, 81 N.E.3d 1107, 1117 (Ind. Ct. App. 2017) (citing *Biomet*, 791 N.E.2d at 765).

[19] In the present case, based on the pleadings, the attorney-client relationship between Pearman and Szakaly ended on June 12, 2014. This was evidenced in the letter that Pearman sent to Szakaly, in which Pearman terminated Szakaly. *Appellant's App. Vol. 2* at 62. Additionally, the June 12, 2014 letter shows that Pearman possessed knowledge at that time that some ascertainable damage had occurred due to Szakaly's alleged malpractice. In the letter, Pearman states that there has been "substantial demonstrable damage caused to [his] position in the Jackson matter" because of Szakaly's "actions and/or failures to act on [Pearman's] behalf." *Id*. Therefore, as of June 12, 2014, the attorney-client relationship between Pearman and Szakaly had ended and Pearman was aware that he had sustained an injury as the result of the actions or failure to act of Szakaly. The statute of limitations began to run on June 12, 2014, and

Pearman had until June 12, 2016 to commence his legal malpractice action against Szakaly. Pearman did not file his complaint until December 22, 2016, and it was, consequently, time-barred.

[20] Pearman also contends that the two-year statute of limitations was tolled until January 15, 2015 when this court decided the appeal in his action against the Jacksons. Pearman asserts that under *Biomet*, the statute of limitations governing his complaint was tolled until the conclusion of the underlying action, which was the failure of his appeal in the Jackson matter. However, his reliance on *Biomet* is misplaced. *Biomet* did not hold that the statute of limitations is tolled until the underlying litigation is concluded. In *Biomet*, the cause of action against the attorneys was tolled merely because they remained involved in the ongoing litigation and thus continued their representation of the client. The *Biomet* court adopted the continuous representation doctrine as an exception to the discovery rule, stating, "In a situation where the attorney continues to represent the client in the same matter in which the alleged malpractice occurred, the date of accrual begins at the termination of an attorney's representation of a client in the same matter in which the alleged malpractice occurred." *Biomet*, 791 N.E.2d at 767.

[21] The *Biomet* court also specifically recognized that a client may terminate the attorney-client relationship without giving the attorney an opportunity to mitigate the damages and make a claim of legal malpractice within two years of the date of termination. *Id.* at 766. However, "the continuous representation doctrine does not apply to a client who retains new counsel on appeal." *Id.* at

766 n.2.  Moreover, the continuous representation doctrine does not delay the commencement of the statute of limitations until the end of the attorney-client relationship generally, but only during the attorney's representation of the client in the same matter from which the malpractice claim arose.  *Id.*

[22] The continuous representation doctrine as adopted in the *Biomet* case does not apply to the present case.  Pearman retained new counsel and terminated Szakaly in the Jackson matter on June 12, 2014.  The two-year statute of limitations began to run on the date of Szakaly's termination.  Pearman clearly knew of the alleged negligence by Szakaly when he wrote in the termination letter that he was terminating Szakaly due to his "gross negligence" in the case. *Appellant's App. Vol. 2* at 62.  At that time, Pearman had already hired replacement counsel and did not permit Szakaly to attempt to remedy his alleged mistakes as is contemplated by the continuous representation doctrine. *See, e.g.*, *Biomet*, 791 N.E.2d at 766 (noting that the continuous representation rule avoids disruption of the attorney-client relationship and gives attorneys the chance to remedy mistakes before being sued and, at the same time, relieves clients from having to second-guess the attorney and obtain other legal opinions regarding the attorney's handling of the case).  Therefore, the tolling of the statute of limitations set out in *Biomet* does not apply to save Pearman's untimely complaint.

[23] Pearman also claims the statute of limitations governing his complaint was tolled, and did not begin to accrue, until he knew the actual extent of his damages, which only occurred once the underlying case against the Jacksons

had concluded. We disagree. Pearman's complaint against Szakaly and the attached exhibits establish that Pearman knew that he had suffered a loss from Szakaly's alleged actions or failures to act. *Appellant's App. Vol. 2* at 62. "Indiana courts have held that the discovery rule does not mandate that plaintiffs know with precision the legal injury that has been suffered, but merely anticipates that a plaintiff be possessed of sufficient information to cause him to inquire further in order to determine whether a legal wrong has occurred." *Bambi's Roofing, Inc. v. Moriarty*, 859 N.E.2d 347, 356 (Ind. Ct. App. 2006).

[24] Here, Pearman's termination letter to Szakaly shows that Pearman was aware that he had sustained some ascertainable damage at least as of June 12, 2014. That letter, which was included as part of the pleadings, provided, in relevant part:

> Due to your misrepresentation of the status of this case, gross negligence, failure to comply with our agreements along with my written instructions and your ignoring my right to discovery regarding Pearman v. Jackson, as well as your failure to make the timely and appropriate pleadings to the Court, thereby jeopardizing the outcome of this action, I have terminated your legal representation of me in Pearman v. Jackson.

> . . . .

> Naturally, I have no intention of compensating you for any unpaid amounts that you may claim to be owed to you in this matter. There has been substantial demonstrable damage caused to my position in the Jackson matter by your actions and/or failures to act on my behalf, as well as your apparent failure to forward missing documents from this case to my current counsel.

*Appellant's App. Vol. 2* at 62. The termination letter clearly demonstrated that Pearman was aware of Szakaly's alleged "misrepresentation," "gross negligence," and "failure to comply with [] agreements" involved in the Jackson case and that he had discovered that there had been "substantial demonstrable damage caused to [his] position." *Id.* Additionally, Pearman was aware of "damages" he had incurred by being required to hire replacement counsel.

[25] Further, contrary to Pearman's assertion, his statement in the June 12, 2014 letter that he had suffered substantial demonstrable damage was not merely speculation. Pearman's complaint against Szakaly was based on the premise that if, in the underlying case, Szakaly had submitted evidence that the Jacksons were paying the increased rent associated with their exercise of the lease option, even though they had not given the written notice required by the lease, the trial court would have denied the Jacksons' motion for summary judgment. *See Appellant's Br.* at 19-20. Under his theory, Pearman was damaged when Szakaly failed to timely file his response and designations to the Jacksons' summary judgment motion because, at that time, Pearman lost the chance to submit any responsive designations to counter the Jackson's claims. Although Pearman may not have known the amount of his actual damages, the June 12, 2014 termination letter indicated that he was aware that some ascertainable damage had occurred. Therefore, the statute of limitations period for Pearman's legal malpractice action against Szakaly began to run on June 12, 2014 and expired on June 12, 2016. The trial court did not err in granting

judgment on the pleadings in favor of Szakaly because Pearman's complaint filed on December 22, 2016 was time barred.

[26] Affirmed.

Baker, J., and Bradford, J., concur.